UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
VINCENT MASINO, KEITH LOSCALZO, and
FRANCISCO FERNANDEZ, as Trustees of the
Pavers and Road Builders District Council Pension,
Welfare, Annuity and Apprenticeship, Skill
Improvement, and Safety Funds,             REPORT AND
                                           RECOMMENDATION
                Plaintiffs,
                                           08 CV 462 (ERK)(RML)
    -against-

EDWARD DRAGO, JAMES KILKENNY,
PHILLIP A. FAICCO, RICHARD GRACE, and
the NEW YORK INDEPENDENT CONTRACTORS
ALLIANCE, INC.,

                Defendants.
-------------------------------------------------------------------X

LEVY, United States Magistrate Judge:

       In July 2009, plaintiffs moved for a preliminary injunction to remedy alleged "ERISA violations by NYICA-Appointed fiduciaries." By order dated October 19, 2009, the Honorable Edward R. Korman, United States District Judge, referred the motion to me for a report and recommendation. By order dated July 7, 2010, Judge Korman granted plaintiffs' motion to amend the complaint (see Amended Complaint, dated July 10, 2010), and plaintiffs have since renewed their motion for a preliminary injunction and have narrowed the issues. In addition, plaintiffs now request that the court consider their motion, in the alternative, as a motion for partial summary judgment. (See Pls.' Supplemental Submission in Support of Motion Regarding Apprenticeship Program, dated Jan. 7, 2011 ("Pls.' Supp. Mem."), at 3.)

       Plaintiffs now frame the issue as:

> whether the NYICA-appointed employer trustees of the Pavers and
> Road Builders District Council Apprenticeship, Skill Improvement,
> and Training Fund ("Apprenticeship and Training Fund") and

> NYICA are violating their ERISA fiduciary duties by limiting
> participation in the Fund's apprenticeship program to the small
> number of contributing employers that are NYICA members and
> excluding the vast majority of contributing employers that are not
> NYICA members.

(Id. at 2.) Defendants oppose the motion and argue that "the harm asserted by plaintiffs is illusory." (See Statement of Facts in Opposition to Plaintiffs' Motion for Injunctive Relief Related to the NYICA/Pavers Apprenticeship Program, dated Jan. 14, 2010 ("Defs.' Mem."), at 2.) The General Contractors Association of New York City, Inc. ("GCA"), which has been granted leave to intervene, supports plaintiffs' motion.[1] (See Submission of General Contractors Association of New York City, Inc. in Support of Plaintiffs' Motion Regarding Apprenticeship Program, dated Jan. 14, 2011 ("GCA Mem.").) I heard oral argument on February 3, 2011. For the reasons stated below, I respectfully recommend that plaintiffs' motion for partial summary judgment be granted.

### BACKGROUND

Plaintiffs ("plaintiffs" or the "Union Trustees") are the union-appointed trustees of the Pavers and Road Builders District Council Pension, Welfare, Annuity, and Apprenticeship, Skill Improvement, and Safety Funds (the "Benefit Funds" or the "Funds"). The defendants are: (1) the New York Independent Contractors Alliance, Inc. ("NYICA"), an employer association, (2) NYICA-appointed Employer Trustees Anthony Robibero (who replaced Edward Drago as an Employer Trustee in Fall 2010), James Kilkenny, and Philip A. Faicco (the "Employer Trustees"), and (3) Richard Grace, NYICA's president and chairman (collectively, "defendants"). Intervenor

---

[1] In 2005, the GCA negotiated collective bargaining agreements with Asphalt Pavers Local 1018 and Highway, Road and Street Construction Laborers Local 1010, both constituent members of the Pavers and Road Builders District Council. It is now the largest employer association that is a party to a collective bargaining agreement with the Union. (See Submission of General Contractors Association of New York City, Inc. in Support of Plaintiffs' Motion Regarding Apprenticeship Program, dated Jan. 14, 2011, at 1–2.)

-2-

GCA is an association of unionized public works contractors. The Pavers and Road Builders District Council (the "District Council" or the "Union") is not a party to this action.

In this motion, the Union Trustees seek to remedy what they consider NYICA and its appointees' "attempt to monopolize" the Funds' apprenticeship program (the "Apprenticeship Program"), which receives 100 percent of its funding from the Apprenticeship, Skill Improvement and Safety Fund (the "Apprenticeship Fund" or the "Training Fund"). (See Amended Complaint, dated July 8, 2010, ¶¶ 44-56.) Currently, the Apprenticeship Program is open only to employers who are members of NYICA. Those employers make up approximately ten percent of the employers who contribute to the Fund, which does not administer the Apprenticeship Program but is its sole source of funding.

To understand the current state of affairs, some history is in order. Briefly, the Benefit Funds, including the Apprenticeship Fund, are governed by a Trust Agreement between NYICA and the District Council, which sets out the duties and rights of the parties with respect to the management and administration of the Funds. (See Amended and Restated Agreement and Declaration of Trust, effective Nov. 28, 2005 ("Trust Agreement"), annexed to the Declaration of Anthony Fasulo, dated Aug. 11, 2009, as Ex. 1.) The Apprenticeship Fund, in turn, sponsors many training programs for employees, including the Apprenticeship Program. Under New York State regulations, all employers who wish to bid on and perform public works projects in New York are required to employ apprentices who are enrolled in an apprenticeship program registered by the New York State Department of Labor ("NYSDOL"). See 12 N.Y. Comp. Codes R. & Regs., tit. 12, § 601 (2011).[2]

---

[2] In addition, New York City Executive Order No. 50 mandates that many City contracts
(continued...)

All employees who are covered by collective bargaining agreements between the District Council and contributing employers have access to the training programs offered by the Apprenticeship Fund, with one exception: only employees whose employers are members of NYICA may participate in the Apprenticeship Program.[3]  This situation dates back to 2001, when the Apprenticeship Program was formed and was approved by NYSDOL.  It was created by NYICA and the District Council, which had entered into a collective bargaining agreement the same year,[4] and is administered by the Joint Apprenticeship Committee ("JAC").  The JAC is comprised of six members, three of whom are appointed by NYICA and three of whom are appointed by the Union.  The current NYICA-appointed JAC representatives are Edward Drago,[5] James Kilkenny, and Richard Grace.  (Pls.' Supp. Mem. at 13.)  Pursuant to the Apprenticeship Program's founding document, only employers who are parties to the collective bargaining agreement between NYICA and the Union are eligible for participation in the Apprenticeship Program.

---

[2](...continued)
be awarded only to contractors who participate in an apprenticeship program that has been in existence for at least three years.  (See Pls.' Supp. Mem. at 16–17.)

[3] Defendants point out that, while none of the other training programs is explicitly limited to employees of NYICA members, many of the other programs have eligibility requirements and therefore are not automatically available to all employees of employers who participate in the Training Fund.  (See Defs.' Supp. Mem. at 14 (citing Trust Agreement, Art. V, § 3(c)).)

[4] At oral argument on September 24, 2010, plaintiffs' counsel informed the court that the collective bargaining agreement between NYICA and the Union had expired.  (Transcript of Oral Argument, dated Sept. 24, 2010, at 7; see also Pls.' Supp. Mem. at 9.)  Since then, the Funds have been placing NYICA's contributions into escrow.

[5] Drago resigned from his position as Employer Trustee of the Apprenticeship Fund in September 2010 (Transcript of Oral Argument, dated Sept. 24, 2010, at 16), but he remains a NYICA-appointed member of the JAC.

The Apprenticeship Fund (created in 1996) was not a party to the formation of the Apprenticeship Program. However, it presently provides funding for the Apprenticeship Program. Under the Trust Agreement, the Apprenticeship Fund is governed by a Board of Trustees composed of equal numbers of Union Trustees and Employer Trustees. (See Trust Agreement, Art. III, § 1.) All of the Employer Trustees are appointed by NYICA and serve at NYICA's pleasure. (Id.) The JAC is the "sponsor" of the Apprenticeship Program under NYSDOL regulations (which require the establishment of a sponsoring committee made up of both the union and employers); however, the JAC's sole funding source is the Apprenticeship Fund.

The District Council has since entered into collective bargaining agreements with a number of other employer groups, including the GCA, and with independent employers. Those other employers, who are not members of NYICA, are not co-sponsors of the Apprenticeship Program. Nonetheless, their collective bargaining agreements require them to contribute to the Funds. Therefore, employees of those non-NYICA employers contribute to the Training Fund but may not participate in the Apprenticeship Program, unless their employers join NYICA. According to plaintiffs, the vast majority of the Fund's contributing employers are not NYICA members.[6]

As defendants point out, however, the Apprenticeship Program pre-dated the Union's collective bargaining agreements with the GCA and other employers. At any rate, as

---

[6] According to plaintiffs, in 2008 "NYICA employers paid less than 2.5% of the total contributions received by the Apprenticeship and Training Fund during the year," meaning that "[m]ore than 97% of the Fund's contribution income for the year was received from employers that were not affiliated with NYICA[.]" (Pls.' Supp. Mem. at 7–8.) For 2009, "NYICA employers paid about 3% of the total contributions received by the Apprenticeship & Training Fund during the year" and thus "[a]bout 97% of the Fund's contribution income for the year was received from employers that are not members of NYICA[.]" (Id. at 8.)

defendants emphasize, any employer or employer association may sponsor its own registered apprenticeship training program. In fact, since plaintiffs first filed their preliminary injunction motion, the GCA and the Union have co-sponsored a new apprenticeship training program, which NYSDOL has approved. (See Defs.' Mem. at 2.) The GCA no longer makes contributions to the Training Fund, but now contributes to a different Fund, which finances the new apprenticeship program. (See Pls.' Supp. Mem. at 16 n.5.)

In their motion, plaintiffs request an order compelling NYICA and the Employer Trustees to cooperate with the Union Trustees and the Union-appointed members of the JAC in modifying the Apprenticeship Program to allow participation by non-NYICA employers. Defendants argue that such an order "would compel the Employer Trustees to take actions that are patently beyond their authority" and "would be in violation of the specific terms of the Trust Agreement governing the Fund." (Defs.' Mem. at 5.) They point to the agreement governing the operation of the Apprenticeship Program, known as the "Standards," which states that "[c]hanges or amendments" must be on mutual agreement of NYICA and the Union and must be submitted to NYSDOL for approval. (See Defs.' Mem., Ex. 5.)

## DISCUSSION

### A. Standard for Summary Judgment

A court shall grant summary judgment if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and decide only whether there is any genuine issue to be tried. Eastman Mach. Co. v. United States, 841 F.2d 469,

473 (2d Cir. 1988). "[T]he court is not to weigh the evidence, or assess the credibility of the witnesses, or resolve issues of fact . . . . Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment." United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994) (internal citations omitted). A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In other words, there must be more than "a scintilla of evidence" to support the non-moving party's claims, id. at 251; "assertions that are conclusory" will not suffice, Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).

  B. Fiduciary Duty

  Whether deemed a motion for partial summary judgment or a motion for a preliminary injunction, the crux of plaintiffs' argument is that NYICA and its appointed Fund trustees are violating their fiduciary duties to the Training Fund by refusing to alter the status quo and open the Apprenticeship Program to all employers who have collective bargaining agreements with the Union and contribute to the Training Fund. According to plaintiffs, the Employer Trustees are "limiting participation in the Fund's apprenticeship program to NYICA members" in an effort "to advance the institutional interests of NYICA by giving NYICA employers a business advantage over contributing employers that are not NYICA members." (Pls.' Supp. Mem. at 3.)

  There is no dispute that the Training Fund and the Apprenticeship Program are governed by ERISA and that the Employer Trustees are ERISA fiduciaries with respect to the

Funds. See 29 U.S.C. §§ 1002(1), (3), 1003(a)[7]; see also Cal. Div. of Labor Standards Enforcement v. Dillingham Constr. N.A., Inc., 519 U.S. 316, 327 (1996) (stating that "apprenticeship programs paid for out of trust funds are ERISA plans"); Milwaukee Area Joint Apprenticeship Training Comm. for Elec. Industry v. Howell, 67 F.3d 1333, 1337 (7th Cir. 1995) (stating that "[j]oint apprenticeship and training funds are 'welfare benefit plans' under ERISA," and therefore, "the trustees of the plan are bound by the fiduciary duties imposed by ERISA"); Citrin v. Erikson, 911 F. Supp. 673, 680 (S.D.N.Y. 1996) (explaining that joint apprenticeship program, which was structured as a jointly-administered trust in compliance with the Taft-Hartley Act, was an ERISA plan). ERISA's standard of care includes a duty of loyalty, under which a plan fiduciary "shall discharge his duties . . . solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A). In addition, under ERISA's standard of care, a fiduciary "shall discharge his duties with respect to a plan . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." § 1104(a)(1)(B). These duties are "strict" and they "extend[] to all participants and beneficiaries of a multiemployer plan." Cent. States, Southeast and Southwest Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 575-76 (1985).

Defendants argue that the Apprenticeship Program is an independent entity that operates according to its own founding documents and principles. In fact, the program has

---

[7] ERISA covers any "employee welfare benefit plan," which the statute defines as including "any plan, fund or program . . . established or maintained by an employer, by an employee organization, or both . . . for the purpose of providing for its participants or their beneficiaries . . . apprenticeship or other training programs . . . ." 29 U.S.C. § 1002(1).

remained unchanged since its inception. What has changed is that the Union has entered into collective bargaining agreements with other employers, who are not NYICA members but are required to contribute to the Funds and were promised access to the Apprenticeship Program.[8]

Moreover, defendants stress that the Apprenticeship Program "was created and is governed by an agreement, the Apprenticeship Standards, entered into between NYICA and the Pavers and Road Builders District Council, with its affiliate Unions . . . ." (Defs.' Mem. at 5.) Under those NYSDOL-approved Apprenticeship Standards, any modification of the Apprenticeship Program's terms can only be made by mutual agreement of NYICA and the Union, and must be approved by NYSDOL. (Defs.' Mem., Ex. 5 at 12.) Therefore, if this court were to grant plaintiffs' request, it would be ordering a change in the Apprenticeship Standards at the behest of the Union Trustees, without the approval of NYICA or NYSDOL, which purportedly would violate the terms of the Apprenticeship Standards.

Notwithstanding the contentious history between the Union-appointed trustees and NYICA (see, e.g., Masino v. Montelle, 05 CV 2447), the issue raised in this motion is a narrow one: Is it a breach of fiduciary duty under ERISA for Fund trustees to limit access to one of the Fund's training programs to a specific set of participating employers? The court's research uncovered no case directly on point, and the parties have cited none. As this is apparently an issue of first impression, the court must look to general principles for guidance.

Generally speaking, "trust documents cannot excuse trustees from their duties under

---

[8] For example, GCA's collective bargaining agreement with Local 1010 states that employers in good standing with the GCA are eligible to participate in the Apprenticeship Program. (See GCA Mem. at 2.) Defendants argue that access to the Apprenticeship Program "has never been part of any offer the Union could make" to non-NYICA employers. (Defs.' Mem. at 3.)

ERISA," and "trust documents must generally be construed in light of ERISA's policies." Cent. States, Southeast and Southwest Areas Pension Fund, 472 U.S. at 568 (citing 29 U.S.C. § 1104(a)(1)(D)).  Therefore, trust documents and program agreements will not shield Fund trustees from their ERISA obligations.

Moreover, "trustees' responsibilities and powers under ERISA reflect Congress' policy of 'assuring the equitable character' of the plans." Id. at 570.  Here, the employer trustees offer no financial justification for funding an apprenticeship program that limits access to NYICA employers.  Indeed, they offer no rationale whatsoever, other than to assert that the program's governing documents permit such exclusivity.

In sum, I find that by continuing to fund an apprenticeship program that limits access to a small number of participating employers, the employer trustees have failed to expend Fund assets solely in the collective interest of the Funds' participants and beneficiaries, for the exclusive purpose of providing benefits to all of the participants and beneficiaries, and with the care, skill, prudence, and diligence that reasonable people in their positions would have used.  I therefore conclude that the employer trustees have breached their fiduciary duties to the Funds.

Section 409(a) of ERISA, 29 U.S.C. § 1109(a), provides that a fiduciary who breaches duties imposed by ERISA "shall be subject to such . . . equitable or remedial relief as the court may deem appropriate."  Plaintiffs have cited no authority for their suggestion that the court may unilaterally reform the Apprenticeship Standards to open the program to non-NYICA employers, without the approval of NYSDOL or the District Council.  Since the breach at issue involves inequitable expenditures, the remedy must address that violation directly.  As there are no disputed issues of material fact, I respectfully recommend that plaintiffs' motion for partial

summary judgment be granted, and that the Trustees be permanently enjoined[9] from using the Funds' monies to support the Apprenticeship Program until such time as the Apprenticeship Standards are amended to allow the participation of all employers who contribute to the Funds.[10]

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Korman and to my chambers, within fourteen (14) days. Failure to file objections within the specified time waives the right to review. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
July 11, 2011

---

[9] Plaintiffs initially moved for a preliminary injunction, which requires a showing that the moving party will be irreparably harmed in the absence of an injunction, and either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor. Forest City Daly Housing, Inc. v. Town of N. Hempstead, 175 F.3d 144, 149 (2d Cir. 1999). A preliminary injunction is considered a "drastic" and "extraordinary" remedy. Hanson Trust Plc. v. ML SCM Acquisition, Inc., 781 F.2d 264, 273 (2d Cir. 1986) (preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies"); Medical Soc'y of the State of N.Y. v. Toia, 560 F.2d 535, 538 (2d Cir. 1977) (preliminary injunction is "an extraordinary and drastic remedy which should not be routinely granted"). Because there are no disputed issues of material fact, plaintiffs satisfy the requirements for partial summary judgment, and it is therefore unnecessary to address the preliminary injunction standard.

[10] At the oral argument on February 3, 2011, the parties reported that NYSDOL had deemed the Apprenticeship Program voluntarily deregistered because it had not trained an apprentice in over a year. (See Transcript of Oral Argument, dated Feb. 3, 2011, at 5.) The issue remains ripe, however, since the program can apply for re-registration and because it continues to receive funding from the Training Fund. (See id. at 65.)