UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
VINCENT MASINO, KEITH LOSCALZO, and
FRANCISCO FERNANDEZ, as Trustees of the
Pavers and Road Builders District Council Pension,
Welfare, Annuity, and Apprenticeship, Skill
Improvement, and Safety Funds,   REPORT AND
   RECOMMENDATION
             Plaintiffs,
   08 CV 462 (ERK)(RML)
   -against-

EDWARD DRAGO, JAMES KILKENNY,
PHILLIP A. FAICCO, RICHARD GRACE, and
the NEW YORK INDEPENDENT CONTRACTORS
ALLIANCE, INC.,

             Defendants.
-------------------------------------------------------------------X
LEVY, United States Magistrate Judge:

        Plaintiffs, the union-appointed trustees ("plaintiffs" or the "Union Trustees") of the Pavers and Road Builders District Council Pension, Welfare, Annuity, and Apprenticeship, Skill Improvement, and Safety Funds (the "Benefit Funds" or the "Funds"),[1] move for "immediate temporary and preliminary relief to address the refusal of the Defendant Employer Trustees to conduct a Board of Trustees meeting and their purported, unilateral discharge of the Benefit Funds' co-counsel." (Plaintiffs' Memorandum of Points and Authorities in Support of Their Application for an Immediate Order Directing the Board of Trustees to Meet and Perform Their

---

[1] As the court and parties are well aware, the Funds are governed by a board of trustees that is made up of three trustees appointed by the Pavers and Road Builders District Council and its local affiliates (the "union") and three trustees appointed by the New York Independent Contractors Alliance ("NYICA"). This arrangement dates back to the Funds' formation, when NYICA employers had a collective bargaining agreement with the union. That is no longer the case, and according to plaintiffs, NYICA employers now "account for a *de minimis* amount of the contributions received by the Benefit Funds." (Letter of James S. Ray, Esq., dated Sept. 23, 2011 ("Ray Ltr."), at 3.)

Fiduciary Duties, dated Feb. 16, 2011 ("Pls.' Mem."), at 2.) Defendants, the trustees appointed by the New York Independent Contractors Alliance ("defendants" or the "Employer Trustees"), object to plaintiffs' motion and instead request that the court "order Plaintiffs to proceed to arbitration of the Trustee deadlock over replacement of the Funds' counsel, and appoint an attorney to represent the Funds until that deadlock is resolved and permanent counsel for the Funds is identified by the Board." (Defendants' Memorandum of Law in Opposition to Plaintiffs' Emergency Motion for Relief Related to Retention of Fund Counsel, dated Feb. 17, 2011 ("Defs.' Mem."), at 14.) By order dated September 27, 2011, the Honorable Edward R. Korman, United States District Judge, referred the motion to me for a report and recommendation. For the reasons stated below, I respectfully recommend that plaintiffs' motion be granted and that defendants' request that the parties be ordered to arbitration also be granted.[2]

        This disagreement arose in the context of a collective bargaining dispute between the Union Trustees and Local 175 of the United Plant and Production Workers, International Union of Journeymen & Allied Trades ("Local 175"), which represents the Funds' administrative employees and is aligned with the Employer Trustees. The conflict, which is recounted in great detail in the parties' submissions, apparently came to a head at a meeting of the board of trustees on January 11, 2011. The Employer Trustees refused to commence the meeting and insisted that the Funds' attorneys, who had allegedly taken positions that the Employer Trustees deemed ineffective and hostile to Local 175, could not attend the meeting because their retainer agreements had not been renewed. (See Transcript of 1/11/11 Meeting, annexed as Ex. C to the

---

[2] Defendants have not filed a separate cross-motion for the relief they seek, but I have treated their requests as one.

Third Declaration of Keith Losacalzo, dated Feb. 16, 2011 ("Third Losacalzo Decl.").) Since then, the Union Trustees and Employer Trustees have been at an impasse, with the Employer Trustees refusing to participate in a board meeting with counsel present, and the Union Trustees insisting that the Funds' counsel were never lawfully terminated and therefore must attend meetings of the board. As a result, the board has been unable to meet and attend to the business of the Funds.[3]

It is undisputed that in December 2006, the Funds engaged two law firms. The Employer Trustees nominated one of those firms, Trivella, Forte & Smith, LLP (the "Trivella firm"), and the Union Trustees nominated the other, Gorlick, Kravitz & Listhaus, P.C. (the "Gorlick firm"). The board as a whole approved the engagements of both firms, and each firm's retainer agreement was signed by then-Employer Trustee Anthony Fasulo and Union Trustee Vincent Masino. (See Third Losacalzo Decl., Exs. A, B.) The Trivella firm's retainer agreement states, in pertinent part:

> 1. RETAINER. CLIENT [i.e., the Funds] retains COUNSEL from the date of this Agreement until terminated as provided herein.
>
> * * *
>
> 6. TERMINATION. CLIENT reserves the right to terminate the representation for cause or without cause. Notification, in writing, shall be made to COUNSEL via certified mail.

(Id., Ex. B ¶¶ 1, 6(b).)

Likewise, the Gorlick firm's retainer agreement states, in pertinent part:

> 5. Term of Agreement. This Agreement shall be effective as of the above

---

[3] Indeed, according to plaintiffs, the board of trustees has not had a "proper meeting" since July 13, 2010. (Ray Ltr. at 1.)

> date. Having in mind, and in consideration of the obligations undertaken and assumed by the Law Firm, this Agreement shall continue through November 30, 2008. Thereafter, the Agreement shall continue from year to year in full force and effect upon the same terms and conditions herein provided. Nevertheless, this Agreement may be terminated at any time by written notice of cancellation thirty (30) days in advance of any proposed termination given by either party in accordance with the provisions of Article 6 [Notices] hereof, in which event this Agreement shall then continue in full force and effect until terminating thirty (30) days following the giving of such notice of cancellation.

(Id., Ex. A ¶ 5.) In other words, both retainer agreements are open-ended and are terminable only upon written notice after an affirmative action by the board.

As plaintiffs correctly note, each of the Funds is established and maintained pursuant to an Agreement and Declaration of Trust ("Trust Agreement"), containing essentially the same provisions. Each Trust Agreement states that an action by the board of trustees requires approval by a majority vote. (See Declaration of Anthony Fasulo, dated Aug. 11, 2009 ("Fasulo Decl."), Ex. 1, Art. IV, § 4.) Specifically, each Trust Agreement states, in relevant part:

> Each Trustee shall have one (1) vote. Except as hereinafter provided, all matters shall be determined by a majority vote of all the Trustees voting in person or by proxy at a meeting at which there is a quorum present. . . .

(Id.)

Defendants do not contend or submit evidence to show that the trustees voted to terminate the Funds' counsel, or that the Funds gave either law firm written notice of its termination. (See id. ¶¶ 4, 6.) Therefore, under the terms of the Funds' governing documents and the retainer agreements, the Trivella firm and the Gorlick firm both continue to advise the Funds.

The Employer Trustees, having a laundry list of complaints about the Funds' counsel, seek a comprehensive forensic audit regarding the attorneys' billing, which they deem

excessive and insufficiently documented (see Letter of Nicholas Stevens, Esq., dated July 11, 2011, and exhibits), the appointment of interim counsel, and an order compelling the Union Trustees "to proceed to arbitration of the Trustee deadlock on the question of whether to replace the Funds' counsel." (Defs.' Mem. at 4.) They accuse the Union Trustees of placing their own interests over those of the Funds, and they maintain that the retainer agreements "do not comply with applicable ERISA provisions." (Id. at 3.)

Section 408(b)(2) of the Employee Retirement Income and Security Act ("ERISA"), 29 U.S.C. § 1108(b)(2), states that Fund trustees may contract with a "party in interest"[4] for "office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor." For a transaction between a plan and a service provider to be permitted, "1) the contract or arrangement must be reasonable, 2) the services must be necessary for the operation of the plan, and 3) no more than reasonable compensation may be paid for the services." In re Iron Workers Local 25 Pension Fund, Nos. 04–cv–40243, 07–cv–12368, 2011 WL 4357162, at *24 (E.D. Mich. Apr. 29, 2011).

Defendants contend that the retainer agreements violate this provision because they contain "unreasonable" terms. (Defs.' Mem. at 13.) Specifically, defendants point to a term in the agreement with the Trivella firm that requires the Funds to pay the firm $2,000 by the 10th of each month, whether or not the firm performs any work that month, and they complain that the

---

[4] A "party in interest" includes "a person providing services to [a] plan." 29 U.S.C. § 1002(14)(B). The Fund's attorneys are therefore parties in interest. Under ERISA § 406(a), 29 U.S.C. § 1106(a), certain types of transactions between a plan and a party in interest are prohibited. Section 408(b)(2) provides an exception to this rule.

agreement makes no provision for the return of excess payment.[5] (See Losacalzo Third Decl., Ex. B ¶ 4.) In addition, defendants claim that the agreement with the Gorlick firm would allow the firm to assign performance under the agreement to other attorneys not specifically approved by the board.[6] (See id., Ex. A.) Finally, defendants contend that both retainer agreements "would bind successor ERISA plans without the approval of the trustees of those plans." (Defs.' Mem. at 13–14.)

Defendants cite no case law to support their argument that these provisions are unreasonable as a matter of law and thereby render the retainer agreements void in their entirety, and the court's research uncovered none. Nor do defendants claim that these were not arm's–length transactions, or that the trustees failed to review the retainer agreements carefully and prudently or to consider whether signing them was in the Funds' beneficiaries' best interests.[7] I

---

[5] The $2,000 monthly retainer is for the first eight hours of attorney time, with every additional hour to be billed at the rate of $250 per hour. (See Losacalzo Third Decl., Ex. B ¶ 4.) Defendants do not allege that the Trivella firm ever billed less than eight hours in any given month.

[6] Plaintiffs deny this contention. (See Pls.' Response to Defs.' Memorandum of Law in Opposition to Pls.' Emergency Motion for Relief Related to Retention of Fund Counsel, dated Feb. 22, 2011, at 6 n.4.) In fact, the retainer agreement with the Gorlick firm states: "This Agreement shall not be assignable without the written consent of each party hereto." (Losacalzo Third Decl., Ex. A ¶ 12.)

[7] At least one circuit has held that "[a]bsent subjective intent by the Trustees at the time they entered the agreements to 'benefit parties in interest at the expense of plan participants,'" which intent is not alleged to have been present here, the transaction is permitted under ERISA. In re Iron Workers Local 25 Pension Fund, Nos. 04 CV 40243, 07 CV 12368, 2011 WL 4357162, at *26 (E.D. Mich. Aug. 29, 2011) (quoting Jordan v. Mich. Conference of Teamsters Welfare Fund, 207 F.3d 854, 860-61(6th Cir. 2000) (following Reich v. Compton, 57 F.3d 270, 278 (3d Cir. 1995), and concluding that a transaction prohibited by ERISA requires subjective intent on the part of a plan fiduciary to benefit the party in interest)). But see Chao v. Hall Holding Co., 285 F.3d 415, 441 n. 12 (6th Cir. 2002) (expressing doubt regarding Jordan's subjective intent requirement for prohibited transactions)

therefore find that the retainer agreements do not violate ERISA.

In fact, defendants' true complaint is not with the retainer agreements, but with the Union Trustees and the Funds' counsel, who consistently have taken positions with which the Employer Trustees disagree. As recourse, defendants simply have refused to participate in board meetings and provide guidance and oversight to the Funds.

There can be no dispute that all of the trustees are ERISA fiduciaries. "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983). Consequently, ERISA fiduciaries "must act for the exclusive benefit of plan beneficiaries." Howard v. Shay, 100 F.3d 1484, 1488 (9th Cir. 1996). The fiduciary duties are set forth in ERISA § 404(a)(1), which states, in pertinent part:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–
> (A) for the exclusive purpose of:
> (i) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
> (D) in accordance with the documents and instruments governing the plan. . . .

29 U.S.C. § 1104(a)(1). In Kuper v. Iovenko, 66 F.3d 1447, 1457 (6th Cir. 1995), the Sixth Circuit Court of Appeals explained that the fiduciary duties enumerated under § 404(a)(1) have "three components":

> The first is a duty of loyalty pursuant to which all decisions regarding an ERISA plan must be made with an eye single to the interests of the participants and beneficiaries. The second obligation imposed under ERISA, the "prudent man" obligation, imposes an unwavering duty to act both as a prudent person would act in a similar situation and with single-minded devotion to those same plan participants and beneficiaries. Finally, an ERISA fiduciary must act for the exclusive purpose of providing benefits to plan beneficiaries.

Id. at 1458 (internal citations and punctuation omitted). The duties charged to an ERISA fiduciary are "'the highest known to the law.'" Howard, 100 F.3d at 1488 (quoting Donovan v. Bierwirth, 680 F.2d 263, 272 n. 8 (2d Cir. 1982)).

Claiming that the Employer Trustees are violating their fiduciary duties to the Funds, plaintiffs move pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which provides, in pertinent part, that a plan fiduciary may bring an action:

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).[8] Plaintiffs seek an order compelling all of the trustees "to resume meeting as a Board of Trustees forthwith and otherwise perform their fiduciary duties to the Benefit Funds" and ordering the Employer Trustees "to cease and desist" from claiming that the two retained law firms are no longer the Funds' co-counsel and objecting to the attendance at and participation of the Funds' counsel in board meetings. (Pls.' Mem. at 14.)

I find that the Employer Trustees, by refusing to conduct board meetings with co-

---

[8] Section 502(a)(3) has been described as a "catchall" section "offering appropriate equitable relief for injuries caused by violations that [section] 502 does not elsewhere adequately remedy." Varity Corp. v. Howe, 516 U.S. 489, 512 (1996) (internal quotations omitted).

counsel present, are not acting for the "exclusive purpose" of benefitting the Funds' participants and beneficiaries. To the contrary, their refusal to attend meetings is harmful to the Funds. I therefore respectfully recommend that plaintiffs' application be granted.

As for defendants' request that the court order the parties to arbitration regarding the replacement of the Funds' co-counsel, section 302(c)(5) of the Labor-Management Relations Act ("LMRA") explicitly provides for the compulsory resolution of any deadlocks among benefit fund trustees by a "neutral umpire."[9] 29 U.S.C. § 186(c)(5); N.L.R.B. v. Amax Coal Co., 453 U.S. 322, 337 (1981). "A party invoking this provision 'must satisfy the court that (a) a genuine

---

[9] In addition, the Trust Agreement contains an arbitration clause:

> In the event that the Trustees deadlock on any question of the administration of the Fund[s] at two consecutive regularly-scheduled meetings, the deadlock shall be resolved as follows: an impartial arbitrator may be appointed by unanimous consent of all the Trustees to render a final and binding decision resolving the deadlock. If the Trustees have not designated an impartial arbitrator within ten days after the Trustees deadlocked, any group of Trustees who cast the same vote on the matter in dispute may submit the matter to an impartial arbitrator in accordance with the American Arbitration Association's Impartial Umpire Rules for Arbitration of Impasses Between Trustees of Joint Employee Benefit Trust Funds. The decision of said arbitrator shall be final and binding.

(Fasulo Decl., Ex. 1, Art. IV § 7.) Where a trust agreement contains an arbitration clause, there is a "presumption in favor of arbitration," and therefore a "dispute must be referred to arbitration unless it can be said 'with positive assurance' that the dispute does not fall within the scope of the arbitration clause." Bueno v. Gill, 02-CV-1000, 2002 WL 31106342, at *4 (S.D.N.Y. Sept. 20, 2002) (quoting AT & T Tech., Inc. v. Comm. Workers of Am., 475 U.S. 643, 650 (1986)); see also Bell v. Cendent Corp., 293 F.3d 563, 566 (2d Cir. 2002) ("Where the scope of an arbitration agreement is ambiguous, the . . . federal policy favoring arbitration requires that any doubts . . . be resolved in favor of arbitration.") (internal quotation marks and citation omitted).

deadlock exists on an issue of administration, (b) no agreed neutral person is available to break the impasse, [and] (c) the parties fail to agree on an impartial umpire.'" Citrin v. Erikson, 911 F. Supp. 673, 680 (S.D.N.Y. 1996) (quoting Singleton v. Abramson, 336 F. Supp. 754, 757 (S.D.N.Y. 1971)). The Second Circuit defines an "issue of trust administration" as any issue the trustees have authority to decide under the trust agreement. Mahoney v. Fisher, 277 F.2d 5, 6 (2d Cir. 1960); Barrett v. Miller, 276 F.2d 429, 431 (2d Cir. 1960); Singleton, 336 F. Supp. at 757. Moreover, trustees petitioning for the appointment of an impartial umpire need not demonstrate that the issue for which they request the umpire is absolutely one of trust administration, but rather, that the issue is "possibly" one of trust administration. Barrett, 276 F.2d at 431.

Here, it seems clear that the issue of whether to continue the retainer agreements with the Funds' co–counsel or to terminate them and hire new counsel is an issue of trust administration on which the trustees are deadlocked. In addition, although plaintiffs do not address this question in their reply brief (see Pls.' Response to Defs.' Mem. of Law in Opposition to Pls.' Emergency Motion for Relief Related to Retention of Fund Counsel, dated Feb. 22, 2011 ("Pls.' Reply Mem.")), it is apparent that the parties have not agreed on an impartial umpire to break the trustees' impasse. I therefore respectfully recommend that the court appoint an arbitrator to address the trustee deadlock regarding continuation or replacement of the Funds' counsel.[10] I decline to recommend that interim counsel be appointed or that a forensic audit be

---

[10] On January 7, 2010, Judge Korman denied the Employer Trustees' motion to compel arbitration, without prejudice to a motion for reconsideration to be filed at defendants' convenience. (See Order, entered Jan. 8, 2010.) Defendants have not moved for reconsideration of that order. However, their previous motion concerned a broader range of issues. Regardless, they have raised the issue here, and I find the request reasonable in light of the parties' inability to resolve this disagreement on their own.

conducted relating to the attorneys' billing. Unless and until the Trivella and Gorlick firms are formally terminated, they will continue to advise the Funds. Any disagreements regarding billing may be raised before the arbitrator. I do not recommend that the trustees' obligation to conduct board meetings be stayed pending the outcome of the arbitration.

Any objection to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Korman and to my chambers, within fourteen (14) days. Failure to file objections within the specified time period waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
November 8, 2011